UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **MICHAEL ENGLISH**, <br><br> Defendant. | **2:19-CR-20164-TGB-EAS-1** <br><br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF NO. 66)** |

Defendant Michael English ("English"), an inmate incarcerated at FCI Butner, moves for compassionate release, citing his health concerns including hypertension, hyperparathyroidism, ischemia, cardiomegaly, and tumors throughout his body. Defendant's Motion for Compassionate Release, ECF No. 66, PageID.467. English contends that these conditions require immediate medical care outside of the federal Bureau of Prisons ("BOP"), which has mismanaged and delayed his access to timely treatment. Defendant's Second Supplemental Update, ECF No. 79, PageID.1658–59. The Government responds that English's proper remedy is to file a separate lawsuit claiming a violation of his Eighth Amendment right against deliberate indifference in the healthcare he is receiving. But for the reasons explained below the Court concludes that compassionate release is warranted. For the reasons that follow, English's motion for compassionate release is **GRANTED**.

1

# I.   BACKGROUND

Since being sentenced by the Court on September 12, 2019, English has filed several requests for compassionate release. ECF No. 24; ECF No. 38; ECF No. 48. On May 23, 2022, English filed his third request for compassionate release with BOP, citing the COVID-19 pandemic and his underlying health conditions. ECF No. 66, PageID.478. The next day, English was notified that he had a "large mass" on his brain, and amended his request to note this time-sensitive medical concern. *Id.* at PageID.479. The warden denied English's amended request on May 24, 2022, but "only citing the COVID-19 pandemic and not addressing any of English's medical concerns." *Id.* at PageID.481; Defendant's Reply in Support of Compassionate Release, ECF No. 71, PageID.720.[1]

Shortly after, on June 17, 2022, English filed the present motion for compassionate release.[2] English summarized that between March and

---

[1] English claims he filed another compassionate release request with the warden on June 1, 2022, citing only his health conditions and the need to seek more intensive outside treatment. ECF No. 66, PageID.470. English contends that the warden has not yet responded to his June 1 request. *Id.* There is no record of this request, however, and for the purposes of this Order, the Court does not find it necessary to address the purported fourth compassionate release request.

[2] The Government points out that English initially waited less than 30 days to file the present motion and did exhaust his remedies on an "issue specific" basis, and thus argues that he failed to exhaust his administrative remedies. Government's Response to Defendant's Motion for Compassionate Release; ECF No. 68, PageID.494–95; Government's Response to Defendant's Second Supplemental Update, ECF No. 80, PageID.1707.

May 2022, he was diagnosed with several tumors in his lower back, chest, and on the sphenoid bone behind his eye. ECF No. 66, PageID.470–71. The most concerning tumor, the one behind English's eye, was described as an "irregular mass" that required follow-up from a neurosurgeon. *Id.* at PageID.471.

As detailed in a report by Dr. Raymond Weitzman, a medical expert retained by English to support his compassionate release motion, the tumor on English's sphenoid bone placed him at risk of sensory loss, blindness, life threatening stroke and paralysis, altered mental state, and death. Weitzman Report (June 9, 2022), ECF No. 66, PageID.484. Moreover, given the uncertainty of the origin or pathology of the mass, Dr. Weitzman advised "immediate and complex medical care that can only be rendered by a team of physicians with experience in treating neoplasms involving the base of the brain and the resultant complications that may arise." *Id.* at PageID.484–85. Dr. Weitzman ultimately concluded that English "needs highly specialized care to address this tumor without delay." *Id.* at PageID.485.

Approximately one month after the sphenoid bone tumor was discovered, on June 27, 2022, English had an initial consult with a neurosurgeon at the Tisch Brain Tumor Center at Duke University. Government's Response in Opposition to Compassionate Release, ECF No. 68, PageID.493. In accordance with the neurosurgeon's orders, English received a CT scan of his neck and was referred to Duke ENT

specialists for further evaluation. *Id.* But by late July 2022—two months after the sphenoid bone tumor was discovered—the Government conceded that BOP had still not provided English with "a final diagnosis and treatment plan." *Id.*

On August 24, 2022, English attended his first follow-up appointment at Duke. At this appointment, a doctor informed English that BOP would need to schedule biopsies of the sphenoid bone tumor and the other tumors in his body to assess whether they were cancerous. Defendant's First Supplemental Update, ECF No. 73, PageID.730. English also noted that he was experiencing "severe headaches, dizziness, facial pain, and numbness on the right side of his face," with increasing anxiety due to the uncertainty of his diagnosis. *Id.* at PageID.731. Despite having discovered the sphenoid bone tumor three months earlier, BOP still could not provide English with a diagnosis nor treatment plan.

On September 16, 2022, the Court held an informal phone conference with the parties to discuss English's health and upcoming treatments. The Court required the Government to submit updated versions of English's medical records, and expressed concern regarding the lack of certainty on when exactly the sphenoid bone tumor biopsy would occur and whether the other tumors in English's body would be biopsied. But with the understanding that English would be receiving a biopsy in short order and without having confirmed English's ability to

receive medical care if released, English's counsel and the Court agreed that a ruling on English's compassionate release motion should remain under advisement pending his receipt of this crucial treatment.

Two weeks later, on September 29, 2022, English was taken to Duke for a biopsy of the sphenoid bone tumor. ECF No. 80, PageID.1712. At this time, Duke doctors removed only part of the tumor by inserting devices through English's nasal cavity. Defendant's Medical Records, ECF No. 78 (sealed), PageID.1573–74. English's medical records show that frozen pathology[3] was performed on the biopsied mass, indicating that it was "not concerning for malignancy." *Id.* The biopsied portions were also sent for permanent pathology[4] evaluation. *Id.*

In the early hours of September 30, 2022, English notified BOP staff that he was experiencing excessive bleeding from his nose after the biopsy, but was told he would have to wait, and that medical personnel

---

[3] Frozen pathology or "frozen sectioning" occurs "during surgery to provide the surgeon with a rapid diagnosis for an area of abnormal tissue and the extent of the abnormal area while the patient is in the operating room." *Pathology Reports*, Nat'l Cancer Inst., https://www.cancer.gov/about-cancer/diagnosis-staging/diagnosis/pathology-reports-fact-sheet (last visited Dec. 22, 2022). Frozen pathology can be completed within 15-20 minutes. *Id.*

[4] Permanent pathology involves embedding biopsied tissues "into a permanent paraffin wax block" to be sliced and "placed onto microscopic slides" for examination. *Id.* According to the National Cancer Institute, "[p]reparing fixed sections normally takes several days," such that a pathology report is typically sent to the treating doctor "within 10 days after the biopsy or surgery is performed." *Id.*

would not be able to treat him until the morning. ECF No. 79, PageID.1656. As BOP medical records reflect, English's post-operative discharge orders from Duke noted that a "slight nosebleed" was possible, but the bleeding should not "soak through more than 3 gauze dressings a day." ECF No. 78, PageID.1366. English told BOP staff that he had soaked through more than three gauze dressings, and BOP staff observed that he had "consistent blood coming from his nose." *Id.* at PageID.1363. When English returned to seek medical attention in the early morning, he was transported to Duke Hospital by ambulance. ECF No. 79, PageID.1657. In the approximately eight hours that elapsed between when English sought help from BOP staff and when he was eventually seen by Duke doctors, the nose bleeding had mostly stopped, but his medical records noted "slight continued bleeding." ECF No. 78, PageID.1562. English also complained of a "7/10 frontal headache, slight lightheadedness and dizziness" during his emergency visit. *Id.*

Nearly two months after the biopsy, having not received any updates regarding English's diagnosis, the Court ordered the parties to appear for a status conference set for November 28, 2022. While the Government pointed out that English's medical records indicated that the frozen section of the biopsy was "not concerning for malignancy," ECF No. 78, PageID.1573, it did not provide a definitive answer as to whether English had received a cancer diagnosis. The Court subsequently ordered

the parties to submit supplemental briefing to provide the most updated information regarding English's diagnosis and health conditions.

In response to English's supplemental health updates, the Government submitted a declaration from Dr. Andrew Stock, a BOP physician who interpreted English's medical records to confirm that the biopsy of the sphenoid bone tumor is non-cancerous. Stock Decl. (Dec. 12, 2022), ECF No. 80-3, PageID.1733. Notably, this diagnosis confirmation came almost three months after English's biopsy and nearly six months after the sphenoid bone tumor was first discovered. During this time, English was aware of the tumorous mass behind his eye, but according to English's counsel, he was wholly unaware of whether he had cancer. ECF No. 79, PageID.1656. Moreover, the Government did not dispute English's account of BOP's failure to take him for a follow-up ENT appointment scheduled for October 17, 2022. *Id.* at PageID.1657. Instead, the Government noted that the "target date" for English's next ENT appointment is December 30, 2022, but the appointment is not yet scheduled because of FCI Butner's "Utilization Review Committee" approval process. ECF No. 80-3, PageID.1734.

Additionally, English emphasized that BOP had also been delaying his treatment for another health concern, cardiomegaly (an enlarged heart), which had been noted by BOP medical staff as early as April 7, 2022. *Id.*; ECF No. 78, PageID.1440. English also cited cardiomegaly as a justification for compassionate release in his request to the warden

7

dated May 23, 2022. ECF No. 66, PageID.478. The Government concedes that FCI Butner has no cardiologist on site, but emphasizes that English's cardiomegaly is technically "undiagnosed" because he has yet to see a cardiologist for an echocardiogram. ECF No. 80, PageID.1710; ECF No. 80-3, PageID.1734. The "target date" for English's echocardiogram appointment is apparently January 6, 2023, but it has not been scheduled yet. *Id.* As of now, English has been waiting nearly nine months since the condition was first noted by BOP in his medical records to receive an echocardiogram, and eight months since he raised the issue in a compassionate release request.

At his most recent medical evaluation at FCI Butner on November 15, 2022, English reported relatively severe pain in multiple parts of his body (aching rated at 7/10 pain), chronic chest pain, coughing, and headaches, among other concerns. ECF No. 78, PageID.1308. English's medical records indicate that his "current" health conditions include benign lipomatous neoplasm (fatty tumors), cardiomegaly, hypertension, hyperparathyroidism, low back pain, and shortness of breath. *Id.* at PageID.1313.

On December 22, 2022, the Court held a hearing on English's compassionate release motion, where both parties presented detailed arguments regarding their positions on English's request. The Government rebutted English's contention that the sphenoid bone tumor required additional care or removal. Furthermore, the Government

8

reiterated that though the appointments are not yet finalized, English will be seen for a follow-up ENT appointment and for an echocardiogram in the coming weeks. But when asked for clarification, the Government indicated that despite its requests to BOP, it still could not provide the definitive results of English's permanent pathology results from the September 29 biopsy.

## II.   LEGAL STANDARD

After the defendant has satisfied the administrative exhaustion requirement of the First Step Act, *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020), the Court may review the "three substantive requirements" for granting compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must find the existence of "extraordinary and compelling reasons" warranting the reduction. *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

Second, the Court must find that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). But absent "an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

Third, the Court must consider the sentencing factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors account for the defendant's recidivism risk,

danger to the public, seriousness of the offense, and how to provide the defendant with "medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)–(D).

## III.   DISCUSSION

### A. English Has Satisfied the First Step Act's Administrative Exhaustion Requirement

At the December 22 hearing, the Government reaffirmed its position that English has not satisfied the First Step Act's administrative exhaustion requirement. Specifically, although English claims that he submitted an amended request highlighting the sphenoid bone tumor on May 24, 2022 *before* the warden issued the denial, it is not clear from record whether the warden received notice of the amended request before denying English's request on May 24, 2022. *See* ECF No. 66, PageID.478– 82. In particular, English's amended request is time-stamped to show its submission on May 24, 2022 at 1:36 pm. *Id.* at PageID.479. But the warden's May 24 letter denying compassionate release on COVID-related grounds does not include the time when it was issued. *Id.* at PageID.481– 82. Accordingly, the Government contends that English failed to exhaust his administrative on an "issue specific" basis. ECF No. 68, PageID.494.

However, while the Sixth Circuit has held that the exhaustion requirement in § 3582(c)(1)(A) is mandatory, *Alam*, 960 F.3d at 833, it has yet to address whether this requirement includes issue exhaustion. But several courts in this district have concluded that § 3582(c)(1)(A) does

not require issue exhaustion. *See United States v. Ferguson*, 536 F. Supp. 3d 139, 142 (E.D. Mich. 2021); *United States v. Williams*, 473 F. Supp. 3d 772, 775 (E.D. Mich. 2020) (noting that issue exhaustion "is not mandated in any plain terms of the statute").

"And even if imposing an issue exhaustion requirement may be appropriate where the defendant files an administrative request on one ground and then brings a motion on an unrelated ground, . . . that is not the type of case here." *Ferguson*, 539 F. Supp. 3d at 143 (citation omitted). Instead, on May 23, 2022, English described medical conditions he felt were extraordinary and compelling in his first administrative request, explicitly listing hypertension, hyperparathyroidism, cardiomegaly, ischemia, shortness of breath, nodules in his chest and lower back, and chest pain. ECF No. 66, PageID.478. English now relies on those same circumstances in addition to the sphenoid bone tumor, which was raised in his May 24 request. *Id.* at PageID.479. Moreover, as the Government notes, if BOP failed to respond to English's amended request submitted on May 24, 2022, resolution on the merits is now appropriate because over 30 days have passed. ECF No. 80, PageID.1707. Therefore, the Court will consider English's motion in its entirety. *See Ferguson*, 539 F. Supp. 3d at 143.

### B. BOP's Gross Mismanagement of English's Healthcare Constitutes an Extraordinary and Compelling Circumstance

The parties agree that, according to the recently provided diagnosis confirmation, English has not been formally diagnosed with cancer, or with any other terminal illness. While such life-threatening conditions may present strong reasons for granting compassionate release, they are not the only kinds of reasons that suffice. Here, the record presents a history of BOP's gross mismanagement of English's serious health conditions. And even if it is not clear that English's medical conditions alone are life-threatening, the record here demonstrates that the mismanagement of these conditions creates extraordinary and compelling circumstances warranting compassionate release.

In *United States v. Verasawmi*, the court summarized several cases where "failure to provide necessary treatment or undue delays in treating serious medical conditions" were found to present extraordinary and compelling reasons for compassionate release. No. 17-254, 2022 WL 2763518, at *7 (D.N.J. July 15, 2022) (citing *United States v. Beck*, 425 F. Supp. 3d 573, 580–84 (M.D.N.C. 2019); *United States v. Almonte*, No. 05-58, 2020 WL 1812713, *6–7 (D. Conn. Apr. 9. 2020); *United States v. Robles*, No. 19-4122, 2022 WL 229362, at *2 (S.D. Cal. Jan. 26, 2022)). As the *Verasawmi* court recognized, most of these cases involved defendants with life-threatening conditions that were nearly certain to be fatal because of BOP's gross mismanagement. *Id.* at *9. But even though the

12

defendant in *Verasawmi* did not have a life-threatening illness, the court found that BOP's inadequate care for her serious health issues (including lung and throat damage requiring her to use portable oxygen, severe mental illness, heart irregularities, migraines, and incontinence) justified her release. *Id.* Specifically, the court concluded that "the compounding effects" of BOP's mismanagement on the defendant's "serious medical issues, some of which place her at heightened risk of severe illness from COVID-19, and others of which independently place her at risk of serious health complications or cause significant pain," required compassionate release to ensure her conditions would not prove fatal. *Id.* at *9–10.

Similarly, in *United States v. Derentz*, the court granted compassionate release based on BOP's mismanagement of the defendant's treatment for a detached retina. No. 15-418, 2022 WL 2192931, at *1 (E.D. Pa. June 17, 2022). After receiving treatment for retinal tearing, the defendant required additional surgery in one of his eyes. *Id.* When BOP delayed taking the defendant to get the surgery, his eye was rendered "inoperable because too much time had passed." *Id.* The defendant also claimed that "BOP staff took weeks to schedule" necessary follow-up appointments, and he remained at risk of losing his vision entirely without timely care. *Id.* The court confirmed that the defendant's medical records corroborated his account of the delays, and granted compassionate release because "BOP's repeated delays in arranging for

13

care to protect [the defendant's] vision constitute an extraordinary and compelling reason for release." *Id.* at *4.

And in *United States v. Burr*, the court granted compassionate release even before the defendant confirmed whether his gastric ulcers were cancerous because BOP failed to schedule a timely biopsy. No. 15-362, 2022 WL 17357233, at *8 (M.D.N.C. Dec. 1, 2022). Although numerous doctors ordered biopsies for the defendant's ulcers over the course of two years, "BOP did nothing, in reckless disregard of [the defendant's] health." *Id.* at *7. The court observed that inmates with severe medical issues are "at the BOP's mercy," and "cannot independently schedule needed medical tests or care." *Id.* In addition, BOP's history of canceling and failing to reschedule the defendant's appointments made it impossible for the court to trust that the defendant would receive timely care while incarcerated. *Id.* Lastly, the court reasoned that "the fact that the BOP has provided some care does not excuse its deliberate indifference to [the defendant's] serious medical needs." *Id.* Accordingly, the court concluded that "the inadequate medical care and reckless disregard of [the defendant's] health needs constitutes extraordinary and compelling circumstances" for compassionate release. *Id.* at *8.

Moreover, even it is true, as the Government points out, that English could seek recourse by filing a separate lawsuit on Eighth Amendment grounds, the availability of a potential Eighth Amendment

14

remedy does not foreclose granting compassionate release. Indeed, several courts have recognized the similarities between the grounds for compassionate release and Eighth Amendment claims. Yet none have concluded that an Eighth Amendment claim precludes a defendant from seeking compassionate release. *See Verasawmi*, 2022 WL 2763518, at *8 ("A motion for compassionate release premised on the BOP's 'indifference' to an inmate's medical conditions or failure to provide adequate care bears similarities to claims under the Eighth Amendment for 'deliberate indifference' to a prisoner's 'serious medical needs.'"); *Burr*, 2022 WL 17357233, at *8 (analyzing BOP's mismanagement of the defendant's medical treatment as "deliberate indifference," warranting compassionate release); *see also United States v. D'Angelo*, No. 13-00114, 2022 WL 10066359, at *5 (D. Me. Oct. 17, 2022) (clarifying that "courts considering challenges to BOP medical treatment in the compassionate release context have limited their inquiry to whether the treatment is inadequate or the BOP is indifferent to the defendant's serious medical issues").

Here, the record strongly supports English's contentions that BOP has grossly mismanaged his serious health issues. First, BOP has continually failed to act with necessary expediency to ensure English receives urgent and consistent medical care. A prime example is the fact that English's sphenoid bone tumor was not biopsied until four months after the mass was discovered. Furthermore, the Government did not

15

definitively confirm the tumor diagnosis until nearly three months after the biopsy, over six months after the discovery of the tumor, and only after the Court ordered the Government to provide a medical update that answered the question. During this time, English surely experienced significant anxiety over an uncertain diagnosis, while BOP failed to make any meaningful treatment plan.

And as of December 22, 2022—nearly four months after the biopsy and seven months after discovering the sphenoid bone tumor—BOP could not provide the Government with the permanent pathology results of the biopsy. While the Government emphasized that this delay may be attributable to Duke, this inability to timely report key results is part of an unacceptable pattern of mismanagement. A patient cannot be expected to make decisions about his care if he is not provided with the results of medical testing. Where the possible result could be a cancer diagnosis, delays in the testing itself or communication of the test results to the patient is unacceptable, and clearly places the health of the patient at risk. Moreover, as explained by the National Cancer Institute, permanent pathology "preserves more detail and is more commonly used to make a diagnosis than frozen sections."[5] And several medical providers publicly note that to avoid potential inaccuracies in diagnosis from frozen sections, permanent sections are considered the most accurate method of

---

[5] *Pathology Reports*, *supra* note 3.

cancer diagnosis.[6] Therefore, BOP's failure to confirm the results of English's permanent pathology diagnosis is yet another troubling example of its gross mismanagement.

Although the frozen section pathology results indicate that the tumor is non-cancerous, it is due only to good fortune that BOP's delay in completing this biopsy in a timely manner did not allow a malignant tumor to grow and potentially inflict fatal damage to English. Similarly, BOP neglected explicit medical directives from Duke doctors when it delayed English's emergency medical care for his post-operative nosebleed. ECF No. 78, PageID.1366. Though it appears that English did not suffer permanent injury from the nosebleed, this incident exemplifies BOP's failure to act proportionally to English's serious health issues.

Second, the Court is not persuaded that BOP has concrete treatment plans for English's serious medical conditions. The Government claims that BOP is not "failing to implement any recommended treatment plan from an outside provider." ECF No. 80, PageID.1718. But this statement proves too much. BOP has repeatedly delayed English's access to outside medical care, so much so that he may

---

[6] *See, e.g.*, *Surgical Pathology/Autopsy: Frozen Section*, Univ. Wisc. Hosps. & Clinics, https://www.uwhealth.org/lab-test-directory/surgical-pathologyautopsy/name-68162-en.html (last visited Dec. 22, 2022); *Permanent & Frozen Sections*, Va. Breast Ctr., http://www.vabreastcenter.com/ermanent-frozen-sections (last visited Dec. 22, 2022).

not even be able to get a treatment plan developed. And in fact, the Government did not dispute English's contention that BOP failed to take him to a follow-up ENT appointment on October 17, 2022, which was presumably part of a recommended treatment plan that BOP disregarded. At the December 22 hearing, the Government suggested that the rescheduled ENT appointment with a target date of December 30, 2022 was initiated by BOP only after English's nosebleed incident. But English's medical records from Duke confirm that English had a "formal follow up scheduled" for October 17, 2022, to which BOP failed to transport him. ECF No. 78, PageID.1570.

Moreover, even if the Government is correct that Duke doctors did not specifically require additional follow-up on removing the sphenoid bone tumor or other tumors in English's body, this does not mean that English's need for consistent monitoring is any less significant. In reviewing English's medical records as of June 2022, Dr. Weitzman opined that "total excision" of the tumor may not be possible. ECF No. 66, PageID.484. But even without having the benefit of a diagnosis, Dr. Weitzman emphasized that the tumor "requir[es] close follow up and continued evaluation" to avoid serious consequences, including blindness, stroke, paralysis, and severe facial pain. *Id.* Based on BOP's pattern of delay, this record suggests that English will not receive the high level of monitoring required to avoid these potentially life-threatening issues.

18

Third, while prior briefing and status conferences centered around BOP's treatment of English's sphenoid bone tumor, the Government incorrectly suggests that English has not previously raised his cardiomegaly as a condition for which he is receiving inadequate treatment. Moreover, BOP's handling of the cardiomegaly only further exemplifies its pattern of gross mismanagement. English's medical records corroborate that BOP has listed cardiomegaly as a health concern since at least April 2022. And English referenced cardiomegaly in his third compassionate release request with BOP and in his opening motion filed in June 2022. But in the past eight months, including since November 2022 when BOP noted that English required an echocardiogram, BOP has not scheduled an echocardiogram appointment. ECF No. 78, PageID.1313; ECF No. 80, PageID.1710; ECF No. 80-3, PageID.1734. And because a formal cardiomegaly diagnosis requires an echocardiogram that English has not received, it is circular for the Government to argue that cardiomegaly cannot be used to support English's compassionate release motion because it is "undiagnosed."

In sum, BOP's gross mismanagement of English's serious health conditions, even if they are not yet life-threatening, presents an extraordinary and compelling reason for release. Despite the Court's urging, BOP has failed to make any notable improvements to its unacceptably slow pace of providing English with crucial treatment.

19

Therefore, BOP's repeated delays coupled with English's serious health concerns and its lack of treatment plan support compassionate release.

## C. The § 3553(a) Sentencing Factors Support English's Release

In assessing the § 3553(a) factors, the Court recognizes that English's offense of conviction was quite serious. English pleaded guilty to one count of conspiracy to distribute at least 500 grams of cocaine and at least 100 grams of heroin, and is currently serving a 78-month sentence. As the Court noted in denying English's first motion for compassionate release, he acted as an organizer, leader, manager, or supervisor in the drug trafficking conspiracy. ECF No. 44, PageID.300. Moreover, English committed the crime while he was still on supervised release after completing a substantial sentence for a similar drug trafficking offense. *Id.*

Such drug-related offenses are extremely dangerous and destructive to communities. But given English's serious health challenges, the Court's concern that English will become re-engaged in criminal activity is substantially reduced. Deterrence is also a less significant because English's condition itself is likely to deter him from committing new crimes. Although a longer prison term is often considered as a deterrent, the weight of that factor must be balanced against the significant health risks English faces if BOP's delays and

20

unresponsiveness inhibit him from receiving the immediate medical attention he needs.

As of December 2022, English has been incarcerated for approximately 46 months, with 32 months remaining until his earliest release date of August 2025. ECF No. 66, PageID.487. English has now served over 50% of his sentence. *Id.* at PageID.466. Additionally, English has had only one misconduct incident in prison, which he claims was due to his health issues. *Id.* at 466–67.

English will also have significantly better prospects of obtaining expedited medical care outside of prison. English confirms that his wife has already enrolled him in the Healthy Michigan Plan, an Affordable Care Act insurance plan, that provides "full coverage" for his medical needs. ECF No. 79-2, PageID.1701. English's pastor, Deon Clark, has attested that he is committed to providing housing, financial support, and transportation if English is released. Deon Clark Decl. (Nov. 30, 2022), ECF No. 79-3, PageID.1703–04. Furthermore, English's wife intends to relocate to Michigan to assist in his care, and Pastor Clark attests that English can still rely on him for support even after English moves in with his wife. *Id*. Although the Court cannot be certain that the level of healthcare available to English outside of the BOP will be superior to that which he received when he was taken to the Tisch Brain Tumor Center at Duke University, the issue is one of timeliness, responsiveness, and speed. English has no power to plan his treatment and care at Duke;

21

his ability to avail himself of that health system's quality is simply outside his control. English's serious health situation and BOP's sluggish response to his urgent needs constitute extraordinary and compelling reasons justifying release, in view of the recurrent delays in providing him with timely and adequate treatment for his conditions.

Therefore, after weighing all the arguments thoroughly briefed and argued by the parties, the Court concludes that a modification of English's sentence is appropriate. The relevant factors under 18 U.S.C. § 3553, and the presence of extraordinary and compelling circumstances justify permitting English to begin serving his four-year term of supervised release, with the special condition of home detention. *See, e.g.*, *United States v. Quinones Rodriguez*, No. 13-30, 2020 WL 5045203, at *4 (W.D. Va. Aug. 26, 2020) (granting compassionate release and reducing the defendant's "sentence of imprisonment to time served, with supervised release with a condition of home confinement to follow for the remaining 36 months of his term of imprisonment").

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release is **GRANTED**. The Court **REDUCES** Defendant's sentence of imprisonment to time served, and Defendant is **ORDERED** to serve a term of supervised release of four years, as previously imposed, with the added special condition that he will serve nine months in home detention, and with all the conditions imposed at the time of his original sentence.

Defendant shall participate in the Location Monitoring Program utilizing Global Positioning Satellite technology for a term of nine months and abide by all the requirements of the program. Defendant is restricted to his residence at all times, according to a curfew as directed by the probation officer. The costs of the program are waived by the Court. Defendant must also provide the complete address where he will reside upon release to the Probation Department in the district where he will be released because it was not included in the motion for compassionate release.

There being a verified residence and an appropriate release plan in place, this Order is **STAYED** for up to fourteen days to make appropriate travel arrangements and to ensure Defendant's safe release. Defendant shall be released as soon as appropriate travel arrangements are made and it is safe for Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Defendant's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

Dated: December 22, 2022   s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE